UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, *solely in its capacity as Trustee,* | |
| Interpleader Plaintiff, | **INTERPLEADER COMPLAINT** |
| - against - | |
| TRIAXX ASSET MANAGEMENT LLC (f/k/a ICP ASSET MANAGEMENT LLC); PACIFIC INVESTMENT MANAGEMENT COMPANY, LLC; SERENGETI ASSET MANAGEMENT, LP; CERBERUS CAPITAL MANAGEMENT, L.P.; TRIAXX PRIME CDO 2006-2, LTD.; and TRIAXX PRIME CDO 2007-1, LTD., | Case No._____ |
| Interpleader Defendants. | |

Interpleader Plaintiff U.S Bank National Association ("U.S. Bank" or the "Trustee"), as successor to Bank of America, National Association (successor by merger to LaSalle Bank National Association), solely in its capacity as Trustee under the Indenture, dated as of December 14, 2006, by and among its predecessor LaSalle, Triaxx Prime CDO 2006-2, Ltd., as Issuer, and Triaxx Prime CDO 2006-2, LLC, as Co-Issuer (the "2006-2 Indenture") and the Indenture, dated as of March 29, 2007, by and among its predecessor LaSalle, Triaxx Prime CDO 2007-1, Ltd., as Issuer, and Triaxx Prime CDO 2007-1, LLC, as Co-Issuer (the "2007-1 Indenture," and together with the 2006-2 Indenture, the "Indentures"),[1] alleges and states that:

---

[1] All capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the respective Indentures.

## INTRODUCTION

1.      The Trustee brings this interpleader action for the purpose of obtaining adjudication of the respective rights of the Interpleader Defendants with respect to certain Collateral Debt Securities held by the Trustee pursuant to the Indentures.  Pursuant to the Indentures and Collateral Management Agreements (defined below), Interpleader Defendant Triaxx Asset Management LLC, in its capacity as Collateral Manager, is responsible for supervising and directing the sale of Collateral Debt Securities.  The Trustee has no responsibility regarding the selection of Collateral Debt Securities to be sold and acts solely upon the direction of the Collateral Manager in releasing its lien and custody of Collateral Debt Securities in connection with any sales of Collateral Debt Securities.

2.      Notwithstanding its circumscribed role, the Trustee finds itself caught in a dispute over the potential sale of certain Collateral Debt Securities held by it.  Certain of the Interpleader Defendants have stated or implied that, depending on whether such securities are sold, the Trustee could be named as a defendant in litigation.  Indeed, one of the Interpleader Defendants, the Collateral Manager, has purported to commence an action against the Trustee in the Cayman Islands, even though that jurisdiction has no connection to the disputes at issue and it has failed to name as defendants any of the investors who have an interest in the potential sale of Collateral Debt Securities.

3.      The Trustee therefore brings this action to obtain a judicial determination as to whether certain of the Collateral Debt Securities that are Defaulted Securities must be sold under the terms of the Indentures and Collateral Management Agreements.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties hereto and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.      This Court also has subject matter jurisdiction over this action under 12 U.S.C. § 632 (the "Edge Act").  This action satisfies the requirements of section 632 because it was brought by U.S. Bank, a national banking association organized under the laws of the United States, and it arises out of banking activity with a distinct foreign aspect. Specifically, U.S. Bank provides corporate trust and other related services to, or on behalf of, the Issuers, which are organized under the laws of the Cayman Islands.  Thus, this action arises out of the Trustee's execution of such services on behalf of foreign issuers, which is an international banking activity.

6.      Venue in this District is appropriate pursuant to 28 U.S.C. § 1397 because one or more defendants reside within this judicial district.

## PARTIES

7.      Interpleader Plaintiff U.S. Bank, as Trustee under the Indentures, is a national banking association with its main office in Cincinnati, Ohio.

8.      Upon information and belief, Interpleader Defendant Triaxx Asset Management LLC ("Triaxx" or the "Collateral Manager") is a limited liability company organized and existing under the laws of the State of Delaware, and none of its members are citizens of the State of Ohio.  Triaxx serves as the Collateral Manager for the Issuers under the Indentures and the Collateral Management Agreement, dated December 14, 2006, by and between Triaxx Prime CDO 2006-2, Ltd. and ICP Asset Management LLC

(the "2006-1 Collateral Management Agreement"), and the Collateral Management Agreement Dated March 29, 2007 by and between Triaxx Prime CDO 2007-1, Ltd. and ICP Asset Management LLC (the "2007-1 Collateral Management Agreement," and together with the 2006-1 Collateral Management Agreement, the "Collateral Management Agreements").

9.     Upon information and belief, Interpleader Defendant Pacific Investment Management Co. LLC ("PIMCO") is a limited liability company organized and existing under the laws of the State of Delaware, and none of its members are citizens of the State of Ohio.  Upon information and belief, PIMCO is a Holder of Class A-1A Notes and Class A-1B2 Notes under the 2006-2 Indenture and a Holder (or controls one or more Holders) of Class A-1D Notes and Class A-1T Notes under the 2007-1 Indenture.

10.     Upon information and belief, Interpleader Defendant Cerberus Capital Management, L.P. ("Cerberus") is a limited partnership organized and existing under the laws of the State of Delaware, and none of its partners are citizens of the State of Ohio. Upon information and belief, Cerberus is a Holder (or controls one or more Holders) of Class A Notes under the 2006-2 Indenture.

11.     Upon information and belief, Interpleader Defendant Serengeti Asset Management, LP ("Serengeti") is a limited partnership organized and existing under the laws of the State of Delaware, and none of its partners are citizens of the State of Ohio. Upon information and belief, Serengeti acts as investment manager to certain holders of Class A1, A2 and B Notes under the 2007-1 Indenture.

12.     Interpleader Defendant Triaxx Prime CDO 2006-2, Ltd. is an exempted corporation organized under the laws of the Cayman Islands.  Triaxx Prime CDO 2006-2,

Ltd. is the Issuer under the 2006-2 Indenture and the owner of certain Collateral Debt Securities.  Triaxx Prime CDO 2006-2, Ltd. is named as a Defendant because the Collateral Debt Securities held under the 2006-2 Indenture are held for its benefit.

13.     Interpleader Defendant Triaxx Prime CDO 2007-1, Ltd. is an exempted corporation organized under the laws of the Cayman Islands.  Triaxx Prime CDO 2007-1, Ltd. is the Issuer under the 2007-1 Indenture and the owner of certain Collateral Debt Securities.  Triaxx Prime CDO 2007-1, Ltd. is named as a Defendant because the Collateral Debt Securities held under the 2007-1 Indenture are held for its benefit.

## BACKGROUND

14.     Pursuant to the Indentures, the Issuers issued certain Notes that are secured by a pool of Collateral Debt Securities and other Collateral.  The Notes were issued in various different classes, or tranches, each of which is entitled to certain proceeds generated by the Collateral Debt Securities in a specified Priority of Payments.

15.     Pursuant to the Indentures, the Issuers pledged the Collateral Debt Securities and other Collateral to the Trustee, in order to secure the Issuers' obligations under the Indentures.  The Trustee holds the Collateral Debt Securities on behalf of the Noteholders and other Secured Parties under the Indentures, and receives and distributes the proceeds payable in respect of such Collateral Debt Securities pursuant to the Priority of Payments.

16.     The Indentures set forth various events that cause a Collateral Debt Security to become a Defaulted Security.  Section 1.01 of the Indentures provides that a Collateral Debt Security becomes a Defaulted Security in the event, *inter alia*, that it is "rated 'Ca' or 'C' by Moody's or is rated 'Caa3' by Moody's and is placed by Moody's on a watchlist

for possible downgrade by Moody's" or "is rated 'CC,' 'D' or 'SD' or below (or had its rating withdrawn) by Standard & Poor's."  Indentures § 1.01.

17.     In the event that a Collateral Debt Security becomes a Defaulted Security, the Indentures provide that the Collateral Manager is required to use commercially reasonable efforts to solicit bids for the Defaulted Security and to direct the Issuer to sell the Defaulted Security to the highest bidder.

18.     Section 12.1(a)(ii) of the Indentures provides, in pertinent part, that the "Issuer (upon direction of the Collateral Manager to the Issuer and the Trustee) … shall sell (a) any Defaulted Security … within three years after such Collateral Debt Security became a Defaulted Security."  *Id.* § 12.1(a)(ii).   Moreover, Section 12.1(b) of the Indenture provides, in pertinent part, that the "Collateral Manager, on behalf of the Issuer, shall use commercially reasonable efforts to sell … each Defaulted Security … required to be sold pursuant to Section 12.1(a) … within the time periods … specified in Section 12.1(a)."  *Id.* § 12.1(b).

19.     In the event that a Defaulted Security is sold pursuant to Section 12(a)(ii) of the Indentures, the Trustee executes the sale by releasing the lien on the Defaulted Security and releasing such asset from its custody.  *Id.* § 10.8(a).  The Trustee then deposits the Sale Proceeds in one of the Collections Accounts, *id.* § 10.8(d), and amounts in such accounts are available for distribution to Noteholders and other Secured Parties in accordance with the Indentures' Priority of Payments.  *Id.* § 10.2(g).

### THE PRIOR DISPUTE INVOLVING THE TRIAXX 2006-1 CDO

20.     Interpleader Plaintiff U.S. Bank and Interpleader Defendant Triaxx are both parties to an Indenture, dated as of September 7, 2006, by and among its predecessor

LaSalle, Triaxx Prime CDO 2006-1, Ltd., as Issuer, and Triaxx Prime CDO 2006-1, LLC, as Co-Issuer (the "2006-1 Indenture").   The terms of the 2006-1 Indenture are substantially identical, for purposes of the instant dispute, to the terms of the Indentures at issue here.

21.    The 2006-1 Indenture, like the Indentures here, contains a provision providing that the "Issuer (upon the direction of the Collateral Manager to the Issuer and the Trustee) … shall sell (a) any Defaulted Security … within three years after such Collateral Debt Security became a Defaulted Security."  2006-1 Indenture § 12.1(a)(ii).  It also contains a provision providing that the "Collateral Manager, on behalf of the Issuer, shall use commercially reasonable efforts to sell … each Defaulted Security … required to be sold pursuant to Section 12.1(a) … within the time periods … specified in Section 12.1(a)."  *Id.* § 12.1(b).

22.    The terms of the Collateral Management Agreement for the Triaxx 2006-1 CDO are also substantially identical, for purposes of the instant dispute, to the terms of the Collateral Management Agreements here.

23.    In 2015, a dispute that was substantially similar to the instant dispute (described below) arose among Triaxx (as Collateral Manager for the Triaxx 2006-1 CDO) and certain holders of notes issued under the 2006-1 Indenture concerning Triaxx's duty in that transaction to sell certain Collateral Debt Securities that had become Defaulted Securities and held such status for three years or more.

24.    On December 31, 2015, U.S. Bank, in its capacity as Trustee under the 2006-1 Indenture, filed a complaint in this Court (Case No. 1:15-cv-10172-WHP), denominated as an interpleader action, naming as defendants the issuer, Triaxx (as Collateral Manager), and certain noteholders.  The Trustee sought, *inter alia*, a judicial

determination as to (a) whether certain Collateral Debt Securities constituted Defaulted Securities as defined in the 2006-1 Indenture, and if so (b) whether Triaxx was required to sell the subject Defaulted Securities, and if so (c) when such a sale should be effectuated.

25.     On June 23, 2016, the Court issued a Memorandum and Order granting summary judgment (the "Triaxx 06-1 Decision") and holding, *inter alia*, that Triaxx is required to sell any Defaulted Security within three years of it becoming a Defaulted Security.  In the Triaxx 06-1 Decision, the Court directed the Issuer, through Triaxx, to effect the sale of Collateral Debt Securities that had been Defaulted Securities for three years or more in accordance with Section 12.1(b) of the 2006-1 Indenture, and ordered Triaxx, going forward, to effect the sale of any Defaulted Securities within three years of the date when they become Defaulted Securities in accordance with the procedures set forth in Section 12.1(a) of the 2006-1 Indenture.  Since the issuance of and in accordance with the Triaxx 06-1 Decision, Triaxx has sold a number of Collateral Debt Securities that had been Defaulted Securities for three years or more.

26.     Triaxx has appealed the Triaxx 06-1 Decision, and the appeal is currently pending before the United States Court of Appeals for the Second Circuit.

**THE INSTANT DISPUTE CONCERNING
THE TRIAXX 2006-2 CDO AND THE TRIAXX 2007-1 CDO**

27.     For each of the Triaxx 2006-2 CDO and the Triaxx 2007-1 CDO, the Monthly Reports and Note Valuation Reports prepared and distributed on behalf of the Issuers under the Indentures and sent to, *inter alia*, Noteholders identify, in a table headed "Non-Performing Asset Detail," certain Collateral Debt Securities as Defaulted Securities and the date when each such Collateral Debt Security was first classified as a Defaulted Security.

28.     The Note Valuation Report as of September 26, 2016, for the Triaxx 2006-2 CDO identified 54 Collateral Debt Securities as Defaulted Securities, of which 34 had been Defaulted Securities for three years or more.   The Note Valuation Report as of September 26, 2016, for the Triaxx 2007-1 CDO identified 37 Collateral Debt Securities as Defaulted Securities, of which 30 had been Defaulted Securities for three years or more.

29.     On September 1, 2016, following the Triaxx 06-1 Decision, counsel for Cerberus sent a letter to the Collateral Manager, copying the Trustee, indicating that it owns or controls in excess of eighty percent of the Triaxx 2006-2 Class A Notes issued by Triaxx Prime CDO 2006-2, LLC and demanding that "the Collateral Manager immediately cure an ongoing default in the performance of its obligations under the Indenture and the CMA to sell the Defaulted Securities within three (3) years after such Collateral Debt Securities have become Defaulted Securities."

30.     On September 22, 2016, counsel for PIMCO sent a letter to the Collateral Manager, the Trustee and Triaxx Prime CDO 2007-1, Ltd. (the Issuer), identifying certain funds and accounts for which PIMCO serves as manager as the holders of Class A-1D Notes and Class A-1T Notes issued by the Issuer.   PIMCO pointed out that certain Collateral Debt Securities were identified in Monthly Reports as Defaulted Securities, some of which securities had been so classified for more than three years.  Citing the Triaxx 06-1 Decision, PIMCO demanded that these Defaulted Securities be sold.

31.     On September 22, 2016, counsel for PIMCO sent a similar letter to the Collateral Manager, the Trustee, and Triaxx Prime CDO 2006-2, Ltd. (the Issuer), with respect to Defaulted Securities in the Triaxx Prime CDO 2006-2 transaction.  As with the

Triaxx Prime CDO 2007-1 transaction, PIMCO demanded that the parties cause Collateral Debt Securities classified for more than three years as Defaulted Securities to be sold.

32.     On or about September 23, 2016, the Trustee (through counsel) spoke to the Collateral Manager (through counsel) to inquire whether it intended to sell Collateral Debt Securities classified in the Triaxx Prime CDO 2006-2 and CDO 2007-1 transactions as Defaulted Securities for more than three years (the "Three-Year Defaulted Securities"). The Collateral Manager indicated that it was considering whether to liquidate such securities.

33.     The Trustee followed up multiple times thereafter to inquire as to the status of the Collateral Manager's review.  The Collateral Manager (through counsel) indicated that its review was on-going.

34.     On October 3, 2016, the Collateral Manager (through counsel) informed the Trustee that it would not agree to cause the Three-Year Defaulted Securities to be sold.  On that same date, the Collateral Manager also informed the Trustee that it had commenced litigation against the Trustee (but not against any of the interested Noteholders) in the Grand Court of the Cayman Islands (the "Cayman Action"), seeking a declaration as to the respective rights of the Collateral Manager and the Trustee with respect to the classification of Collateral Debt Securities and the disposition of Defaulted Securities.

35.     On October 25, 2016, counsel for Serengeti sent a letter to the Trustee indicating that it supports the Cayman Action, which it believes to be the appropriate forum in which to resolve the issues arising from the 2007-1 Indenture and the 2007-1 Collateral Management Agreement.

36.    In its letter Serengeti did not take a position as to whether Three-Year Default Securities should be sold, but based on prior communication from Serengeti the Trustee believes, upon information and belief, that it opposes a sale by the Collateral Manager of the Collateral Debt Securities when they become Three-Year Defaulted Securities.

37.    As of the filing of this Complaint, the Collateral Manager has not sold any of the Three-Year Defaulted Securities in either the Triaxx 2006-2 CDO or the Triaxx 2007-1 CDO.

38.    As described above, the Trustee faces irreconcilable demands as to certain assets deposited under the Indenture.  On the one hand, Cerberus and PIMCO have taken the position that the Three-Year Defaulted Securities should be sold, and the Collateral Manager has indicated that it will not sell the Three-Year Defaulted Securities.

39.    The Trustee has no interest as a claimant in the Collateral Debt Securities that are the subject of this dispute, except to the extent of administrative fees and expenses owing to the Trustee by the Issuer and its costs and disbursements, including legal fees and expenses, with respect to this action, as may be awarded by the Court, may be payable from the sale of any of the Defaulted Securities.

40.    The above-entitled action is not brought by collusion with any of the Interpleader Defendants.

**PLEA FOR RELIEF**

**WHEREFORE**, the Trustee asks this Court:

(i)    to order the Interpleader Defendants to interplead and to settle all claims to the Defaulted Securities and the sale thereof between themselves and any other

persons who claim or may claim an interest, beneficial or legal, in such Defaulted Securities and the sale thereof;

(ii)  for a judicial determination as to whether the Collateral Manager is required to direct the sale of Collateral Debt Securities within three years of such securities becoming Defaulted Securities under the terms of the Indentures;

(iii)  to restrain Interpleader Defendants and all claiming through or acting with them, or claiming any interest in the Defaulted Securities, from commencing or prosecuting any separate proceeding against the Trustee concerning or relating to the issues in this action;

(iv)  to award the Trustee its costs and disbursements, including legal fees and expenses, with respect to this action, from any sale of Defaulted Securities; and

(v)  to award the Trustee such other and further relief as the Court may deem just, proper and equitable.

Dated:        New York, New York
              November 1, 2016

ALSTON & BIRD LLP

By: /s/ Michael E. Johnson
Michael E. Johnson
Richard Leone
90 Park Avenue
New York, New York 10016
(212) 210-9400
michael.johnson@alston.com
richard.leone@alston.com

*Attorneys for Interpleader Plaintiff U.S. Bank National Association, solely in its capacity as Trustee*

-12-